UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW K. STONE and SAMANTHA E. STONE,

                Plaintiffs,

        v.

WELLS FARGO BANK NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC.,

                Defendants.

**MEMORANDUM & ORDER**
24-CV-6933 (HG) (VMS)

**HECTOR GONZALEZ**, United States District Judge:

*Pro se* Plaintiffs Andrew K. Stone and Samantha E. Stone commenced this action on September 25, 2024, against Defendants Wells Fargo Bank, National Association, as Trustee under Pooling and Servicing Agreement dated as of February 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR1 Mortgage Pass-Through Certificates, Series 2006-FR1 ("Wells Fargo") and Select Portfolio Servicing, Inc. ("SPS") for claims related to the foreclosure of a property located at 98 Lewis Avenue in Brooklyn (the "Property"). *See* ECF No. 14 (Amended Complaint, "AC").[1]

Plaintiffs invoke the Court's federal question jurisdiction, *see* 28 U.S.C. § 1331, bringing claims under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, and the Fair Debt Collection Practices Act

---

[1]     Unless otherwise indicated, when quoting cases and Plaintiffs' Amended Complaint, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

("FDCPA"), 15 U.S.C. §§ 1692–1692p.  Plaintiffs also bring several claims under state law.  *See* AC at 27–49.  Plaintiffs seek the following relief: (i) that the Court "reconvey ownership" of the Property to Plaintiffs; (ii) damages of at least $2 million; and (iii) declaratory relief establishing Plaintiffs' exclusive possession of the Property and revoking Defendants' rights and claims to the same.  *See id.* at 49–50.

After Defendants moved to dismiss the AC,[2] Plaintiffs sold the Property to Defendants. For the reasons set forth below, the Court *sua sponte* dismisses several claims for lack of subject matter jurisdiction and GRANTS Defendants' motion to dismiss on the remaining federal claims. As to the remaining state-law claims, the Court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice.

### BACKGROUND[3]

The following facts are drawn from the AC; documents integral to, or incorporated by reference in, the AC; and documents of which the Court may take judicial notice.  *See Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 654 (S.D.N.Y. 2025), *aff'd*, No. 25-73, 2026 WL 366443 (2d Cir. Feb. 10, 2026); *see also Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 465 (S.D.N.Y. 2022) ("On a motion to dismiss, a court may take judicial notice of related lawsuits, judicial decisions, and litigation filings."), *aff'd*, 66 F.4th 69 (2d Cir. 2023).

---

[2]     The motion papers consist of:  ECF No. 28 (Motion to Dismiss, "Mot."); ECF No. 42 (Plaintiffs' Opposition, "Opp."); ECF No. 44 (Defendants' Reply, "Reply").

[3]     The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

2

### A.     Mortgage and Default

In 2005, Plaintiffs Andrew and Samantha Stone obtained a mortgage loan from Fremont Investment & Loan ("Fremont") to purchase the Property. *See* AC ¶¶ 9–11. Plaintiffs executed a $432,000.00 promissory note (the "Note") and gave Fremont a security interest over the Property as collateral (the "Mortgage"). *See id.* ¶¶ 9–11, 154. In 2007, Defendant SPS became the loan servicer on the Mortgage. *See id.* ¶ 13. The following year, Plaintiffs "read some information regarding foreclosure fraud and loan origination malfeasance concerning Fremont." *Id.* ¶ 15. After investigating their loan, Plaintiffs "noticed some irregularities" and requested a Qualified Written Request (QWR) from Fremont and SPS.[4] *Id.* ¶¶ 15–16. Neither Fremont nor SPS responded to Plaintiffs' QWR. *See id.* ¶ 17. As a result, Plaintiffs unilaterally decided to "cease[] all monthly payments to force SPS and Fremont to respond[.]" *Id.* ¶ 18.

The last payment Plaintiffs made on the Mortgage was in September 2008. *See id.* ¶¶ 15–22. That November, SPS warned Plaintiffs that it would foreclose on the Property if it did not receive payments soon, regardless of any QWR. *See id.* ¶ 22. Nevertheless, Plaintiffs continued to withhold their monthly mortgage payments and applied for a loan modification in January 2009. *See id.* ¶¶ 23–24. The loan was never modified. *See id.*

### B.     Foreclosure Action

On May 11, 2009, Fremont sold the Mortgage to Defendant Wells Fargo. *See* N.Y.C. Dep't of Fin., Office of the City Register, Automated City Register Information System

---

[4]     "Under RESPA, loan servicers are . . . required to quickly respond to written requests for information concerning the accuracy of a borrower's account. . . . When such a request meets the requirements of RESPA, it is called a . . . QWR. . . . If a servicer fails to respond to a QWR within thirty days (excluding weekends and holidays), it can be subject to civil liability." *Figueroa v. HSBC Bank USA, N.A.*, No. 16-cv-0893, 2017 WL 1185263, at *6 (N.D.N.Y. Mar. 29, 2017).

("ACRIS"), Block 1594 Lot 47 in Brooklyn, Mortgage Assignment filed on August 24, 2009, CRFN 2009000269568 (the "Mortgage Assignment").[5] Within two weeks of purchasing Plaintiffs' mortgage from Fremont, Wells Fargo commenced a foreclosure action in state court on May 22, 2009. *See Wells Fargo Bank, N.A. v. Stone*, Index No. 12762/2009 (N.Y. Sup. Ct. Kings Cnty. filed May 22, 2009) (the "Foreclosure Action").[6]

The Supreme Court of New York, Kings County entered a default judgment against Plaintiffs on November 28, 2017, based on their failure to appear and answer the complaint. *See* ECF No. 28-5.[7] Approximately five months later, Plaintiffs unsuccessfully sought to vacate the default judgment. *See* ECF No. 28-6 at 4. On September 4, 2018, nine years after Plaintiffs defaulted on their mortgage, the state court entered an order of foreclosure and sale of the

---

[5]   The Court may consider documents outside the pleadings in determining whether it has subject matter jurisdiction. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint"). And in deciding a motion to dismiss, the Court may take judicial notice of public documents available on ACRIS, http://a836-acris.nyc.gov/CP/ [https://perma.cc/K2DB-ASBK]. *See Robbins v. Bank of Am., Nat'l Ass'n*, No. 22-cv-07648, 2023 WL 5956496, at *5 (E.D.N.Y. Sept. 13, 2023) ("Multiple district courts within the Second Circuit have held that property records made available on ACRIS are subject to judicial notice and, therefore, can be relied on when granting a motion to dismiss.").

[6]   The Court cites to documents from the Foreclosure Action as "NYSCEF Dkt. No. __." These are publicly available on the New York state court electronic filing system, https://iapps.courts.state.ny.us/nyscef/HomePage.

[7]   The Court takes judicial notice of documents filed in or associated with the Foreclosure Action. *See, e.g., Plunkett v. U.S. Bank Nat'l Ass'n*, No. 24-cv-05479, 2025 WL 1489904, at *2 (E.D.N.Y. May 23, 2025) ("[T]he Court takes judicial notice of the foreclosure action court records submitted by Defendants."); *Ank Bey El v. CitiMortgage, Inc.*, No. 25-cv-2317, 2025 WL 3552702, at *8 (E.D.N.Y. Dec. 11, 2025) ("[T]he Court can indeed take judicial notice of the documents associated with the Foreclosure Action . . . . But judicial notice is limited to the fact of such litigation and related filings and the Court does not consider those documents for the truth of the matters asserted in the other litigation.").

4

Property, *see* ECF No. 28-7 (the "Foreclosure Order").  The state court determined that Plaintiffs "are barred and foreclosed of all right, claim, lien, title, and interest in the property after the sale of the mortgage property."  *See id.* at 15.

### C. Subsequent Litigation

Plaintiffs dispute the validity of the Foreclosure Order, *see, e.g.*, AC ¶¶ 26, 28, 29, and undertook several attempts to stay the foreclosure sale of the Property—including by filing emergency orders in state court,[8] five Chapter 13 bankruptcy petitions,[9] two Chapter 7 bankruptcy petitions,[10] and the instant action.  *See id.* ¶ 31.

### D. Sale of the Property

On January 28, 2026, while Defendants' motion to dismiss was under advisement, Plaintiffs sold the Property to Defendants.  On February 20, 2026, Defendants discharged the mortgage at issue in this action (the "Sale and Discharge").  *See* ACRIS, Block 1594 Lot 47 in Brooklyn, http://a836-acris.nyc.gov/CP/ [https://perma.cc/K2DB-ASBK].  Defendants also sought an order from the state court to vacate the Foreclosure Order, discontinue the Foreclosure Action without prejudice, and cancel the notice of pendency on the Property.  *See* NYSCEF Dkt.

---

[8]     *See, e.g.,* ECF Nos. 28-6, 28-12.

[9]     *See In re Stone*, No. 18-bk-46986 (Bankr. E.D.N.Y. filed Dec. 5, 2018, dismissed Feb. 19, 2019); *In re Stone*, No. 18-bk-46998 (Bankr. E.D.N.Y. filed Dec. 5, 2018, dismissed Mar. 4, 2019); *In re Stone*, No. 23-bk-40130 (Bankr. E.D.N.Y. filed Jan. 17, 2023, dismissed Mar. 9, 2023); *In re Stone*, No. 23-bk-44309 (Bankr. E.D.N.Y. filed Nov. 27, 2023, dismissed Jan. 15, 2024); *In re Stone*, No. 25-bk-41176 (Bankr. E.D.N.Y. filed Mar. 11, 2025, dismissed Apr. 30, 2025).

[10]    *See In re Stone*, No. 24-bk-41527 (Bankr. E.D.N.Y. filed Apr. 10, 2024, dismissed Oct. 10, 2024); *In re Stone*, No. 25-bk-43609 (Bankr. E.D.N.Y. filed July 29, 2025, closed Apr. 20, 2026).

No. 51.  The state court granted Defendants' motion on March 19, 2026.  *See* NYSCEF Dkt. No. 55.

## **PROCEDURAL HISTORY**

This case has a tortured procedural history, including:  (i) being dismissed without prejudice and re-opened three times, *see* ECF Nos. 6, 9, 11; March 26, 2025, Text Order; (ii) being placed "on hold" while the magistrate judge explored the implications of Andrew Stone's latest bankruptcy filing, *see* August 18, 2025, Text Order; October 9, 2025, Text Order; and (iii) repeated failures by Plaintiffs to comply with unambiguous Court orders, *see, e.g.,* ECF Nos. 5, 6, 11; December 10, 2024, Text Order; July 25, 2025, Text Order; October 10, 2025, Text Order; March 9, 2026, Text Order; March 13, 2026, Text Order.

More recently, the parties failed to notify the Court of the Sale and Discharge.  After learning of this development on its own, the Court ordered the parties to jointly show cause as to whether the Sale and Discharge mooted the claims in this action.  *See* March 5, 2026, Order to Show Cause ("OSC").  Defendants responded to the OSC, indicating that they made several unsuccessful attempts to contact Plaintiffs.  *See* ECF No. 45.  They requested an extension of time to continue attempting to contact Plaintiffs and file a joint response but expressed their position that the Sale and Discharge had, indeed, mooted Plaintiffs' claims.  *See id.*  The Court granted Defendants' request for an extension of time to file a joint response and warned Plaintiffs that failure to comply with the extended deadline would result in prompt dismissal of this action for lack of subject matter jurisdiction.  *See* March 9, 2026, Text Order.  Still, Plaintiffs failed to respond.  Consistent with its warning, the Court dismissed this action without prejudice for lack of subject matter jurisdiction and terminated Defendants' motion to dismiss, ECF No. 28, as moot.  *See* March 13, 2026, Text Order.

After that third dismissal of this action, Plaintiffs belatedly responded to the OSC. *See* ECF No. 47. Plaintiffs conceded that at least some of their claims had been mooted but argued that the Court could still grant relief on their claims seeking money damages. *See id.* They requested that the Court "[a]llow the case to proceed on the merits." *See id.* The Court gave Defendants an opportunity to respond. *See* March 16, 2026, Text Order. Defendants opposed re-opening the case and maintained that all of Plaintiffs' claims, including for damages, have been mooted. *See* ECF No. 49. Defendants indicated that, if re-opened, they wished to renew their motion to dismiss the AC, ECF No. 28. *See id.*

On July 31, 2026, the Court construed Plaintiffs' letter, *see* ECF No. 47, as a motion for reconsideration of the Court's dismissal of the case and a motion to reopen the case, and granted both motions. *See* July 31, 2026, Text Order.

## LEGAL STANDARD

### I.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short, plain statement of the claim against the defendant so that the defendant has adequate notice of the claims being

asserted. *See Iqbal*, 556 U.S. at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678. To satisfy this standard, the complaint must, at a minimum, "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). "Plaintiff must allege sufficient facts to state a plausible claim against each defendant named in his amended complaint." *Mitchell v. Macy's Inc.*, No. 17-cv-1845, 2017 WL 11453552, at \*4 (S.D.N.Y. May 3, 2017).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* "A court may [also] take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).

## II.    *Pro Se* Plaintiffs

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir.

8

2020).  "A pro se litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'"  *Ramos-Nunez v. United States*, No. 14-cr-102, 2019 WL 1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)).

## **DISCUSSION**

Among other things, Plaintiffs allege that Defendants had no right to foreclose on the Property, made fraudulent representations in connection with the underlying mortgage transaction, and harmed Plaintiffs through fraudulent conduct and foreclosure of the Property. Plaintiffs bring 25 claims:  lack of standing to foreclose (count 1); fraud in the concealment (count 2); fraud in the inducement (count 3); intentional infliction of emotional distress (count 4); slander of title (counts 5 and 24); quiet title (counts 6 and 23); declaratory relief (count 7); TILA, HOEPA, and RESPA violations (counts 8 and 9), and FDCPA violations (counts 15 and 25); rescission (count 10); champerty (count 11); dual tracking (count 12); fraud upon the courts (count 13); unjust enrichment (counts 14 and 22); negligence (count 16); fraud (counts 17 and 18); wrongful foreclosure (count 19); breach of contract (count 20); and breach of the implied covenant of good faith and fair dealing (count 21).  The Court dismisses all of these claims.

### I.     **Subject Matter Jurisdiction**

Before turning to Defendants' motion to dismiss, the Court *sua sponte* dismisses certain claims in this action that have been mooted by the Sale and Discharge, pursuant to its independent duty to assess subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3); *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 261 (E.D.N.Y. 2018) ("[F]ederal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking.").

When a case becomes moot, federal courts lack subject matter jurisdiction over the action. *See, e.g., Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (federal courts lack jurisdiction when case becomes moot); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Fox*, 42 F.3d at 140 ("The required legally cognizable interest has alternatively been described as a requirement that a plaintiff have a 'personal stake' in the litigation."). A case is moot "if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC*, 568 U.S. at 91. "The actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* at 90–91.

Here, the Sale and Discharge has mooted any claims seeking to establish Plaintiffs' ownership and possession of the Property through declaratory or injunctive relief. As a result of the Sale and Discharge, there is no actual controversy regarding the parties' rights to the Property, and the Court can no longer provide the requested declaratory and injunctive relief. *See id.* Accordingly, the Court lacks jurisdiction over, and must *sua sponte* dismiss without prejudice in accordance with Fed. R. Civ. P. 12(h)(3), the following claims, which Plaintiffs brought to prevent a foreclosure sale of, and to maintain their ownership and possessory interest in, the Property: lack of standing to foreclose (count 1); quiet title (counts 6 and 23); declaratory relief (count 7); champerty (count 11); and dual tracking (count 12).

10

## II.       Motion to Dismiss

Turning to Defendants' motion, the Court dismisses Plaintiffs' federal claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over their remaining state-law claims.

### A.       *Federal Claims*

The AC alleges that Defendants violated:  RESPA by refusing to answer Plaintiffs' QWR; TILA and HOEPA by failing to provide Plaintiffs with accurate material disclosures and other information about the risks of a mortgage; and the FDCPA by failing to answer Plaintiffs' debt validation request or cease collection activities until the debt was verified by law.  *See* AC ¶¶ 176, 209–10, 240.  The Court finds that Plaintiffs' TILA, HOEPA, and RESPA claims (counts 8 and 9) are barred by *res judicata*, and their FDCPA claims (counts 15 and 25) fail to plausibly state a claim upon which relief can be granted.

#### i.       TILA, HOEPA, and RESPA Claims

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014).  "To prove the affirmative defense of *res judicata* a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.*

"[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025).  "Claims

11

are deemed to have been brought to a final conclusion even when they could have been litigated as defenses in the prior action, including defenses to a foreclosure." *Pennicott v. JPMorgan Chase Bank*, N.A., No. 16-cv-3044, 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018); *see also VDARE*, 162 F.4th at 83 ("This rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation."). "To determine whether particular claims are part of the same transaction for *res judicata* purposes, courts have adopted a pragmatic test that examines whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *VDARE*, 162 F.4th at 83–84 (citing *In re Hunter*, 827 N.E.2d 269 (N.Y. 2005)).

Defendants argue that Plaintiffs' TILA, HOEPA, and RESPA claims are barred by *res judicata* because they could have been litigated in the Foreclosure Action. *See* Mot. at 20–32. The Court agrees.

First, the Foreclosure Action involved a final judgment on the merits. Although Plaintiffs argue that the state foreclosure was not resolved on the merits because it was resolved by default,[11] a "foreclosure default judgment is a final judgment on the merits." *Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (collecting cases).

Next, the parties against whom *res judicata* is being invoked, *i.e.*, Plaintiffs, were parties to the Foreclosure Action. *See, e.g., Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 291 (E.D.N.Y. 2024) ("[T]he element requiring that the previous action involved the party against

---

[11]    Plaintiffs' opposition brief fails to address any of the arguments raised in Defendants' motion. *See generally* Opp. Nevertheless, the Court considers responsive arguments raised in Plaintiffs' pre-motion letter, in light of their *pro se* status. *See* ECF No. 26 (Plaintiffs' Pre-Motion Letter).

whom *res judicata* is invoked or its privy is also met because Plaintiff was the defendant in the Second Foreclosure Action.").[12]

Finally, if Plaintiffs had appeared to defend the Foreclosure Action, they could have raised their TILA, HOEPA, and RESPA claims as defenses or counterclaims, as this case and the Foreclosure Action both arise from the same facts:  the circumstances surrounding Plaintiffs' mortgage payments and Defendants' assignment, foreclosure, and enforcement of the Note and Mortgage.  *See, e.g., Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 576 (2d Cir. 2018) (TILA and RESPA claims barred by *res judicata* because mortgagor could have raised the claims as a defense or counterclaim in the state foreclosure action); *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-cv-4871, 2020 WL 1151313, at *15 (S.D.N.Y. Mar. 9, 2020) ("[F]ederal courts in New York routinely hold that a plaintiff against whom a judgment of foreclosure has been obtained cannot thereafter pursue a RESPA disclosure violation claim arising out of the same mortgage loan."); *Jones*, 2024 WL 2494769, at *7 (E.D.N.Y. May 24, 2024) (collecting cases and explaining that TILA and RESPA claims arising out of the mortgage loan at issue in the state foreclosure action are barred by *res judicata*); *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-cv-07235, 2022 WL 992472, at *5 (E.D.N.Y. Mar. 31, 2022) (same).

---

[12]     The Court takes judicial notice that SPS was not a party to the Foreclosure Action.  *See Wells Fargo Bank, N.A. v. Stone*, Index No. 12762/2009 (N.Y. Sup. Ct. Kings Cnty.). Nevertheless, *res judicata* applies to claims against SPS because, as the servicer of the Mortgage at the time of the Foreclosure Action, SPS was in privity with Wells Fargo.  *See, e.g., Jones v. Select Portfolio Servicing, Inc.*, No. 23-cv-7772, 2024 WL 2494769, at *7 (E.D.N.Y. May 24, 2024) ("Moreover, while SPS is also not a party to the Foreclosure Action, it, too, is entitled to the benefit of *res judicata* of the Foreclosure Judgment as the servicer of Mr. Jones's Mortgage Loan."); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) ("A servicer, such as SPS, can be in privity with the mortgagee that the servicer represents.").

Plaintiffs are precluded from bringing claims in this action that they could have brought in the Foreclosure Action. "[A] party is not free to remain silent in an action in which she is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Harris*, 737 F. App'x at 575. Accordingly, Plaintiffs' claims for TILA, HOEPA, and RESPA violations (counts 8 and 9) are dismissed with prejudice under the doctrine of *res judicata*.[13]

### ii. FDCPA Claims

Even accepting the AC's factual allegations as true, the Court finds that Plaintiffs' FDCPA claims (counts 15 and 25) fail to plausibly state a claim upon which relief can be granted. Plaintiffs bring two claims under the FDCPA, 15 U.S.C. §§ 1692–1692p, seeking rescission of the mortgage loan (count 15) and damages (count 25). Plaintiffs allege that on March 14, 2025, they sent Defendants "a FDCPA Debt Verification with Cease and Desist," but that Defendants "refused or failed to respond as legally required and instead issued a notice to sale in clear violation of law." AC ¶ 32; *see generally* ECF No. 14 at 62–69 (Debt Verification Letter with Cease and Desist, "FDCPA Letter"). Liberally construed, these claims are premised on a § 1692g(b) violation. Defendants move to dismiss both FDCPA claims under Rule 12(b)(6), arguing that Plaintiffs fail to state a claim because the FDCPA Letter is irrelevant to this case, as "it references an account held by a person named Andrea Huntley" and "does not contain any information from which Defendants could identify who sent it or where to send a response." Mot. at 29–30.

---

[13]    The Court does not address Defendants' collateral estoppel arguments because *res judicata* is the better doctrinal fit here.

14

"To state a claim arising under the FDCPA:  (1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt[;] (2) the defendant collecting the debt is considered a 'debt collector'[;] and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017).

Assuming, without deciding, that the AC adequately alleges the first two elements, Plaintiffs nevertheless fail to state a "violation of FDCPA requirements." *Id.*  The relevant requirement provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period described in [§ 1692g(a)] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).  For both of Plaintiffs' FDCPA claims, the AC alleges that Defendants violated § 1692g(b) by not responding or ceasing collection activities after Plaintiffs sent Defendants the FDCPA letter.  *See* AC ¶¶ 209–10, 240.  Fatal to the claim, however, is Plaintiffs' failure to plausibly allege that they "notifie[d]" Defendants in accordance with § 1692g(b), because nothing in the FDCPA Letter identifies Plaintiffs or their mortgage loan.[14]

---

[14]    Indeed, portions of the FDCPA Letter contain placeholders rather than Plaintiffs' information.  For example:  "**Name**[,] **Address**[,] **City State Zip**"; "I don't recall a debt with **XXX**"; "Be it known by these presents that **JOHN DOE©**, Respondent, is in receipt of Debt Collector's above-referenced presentment[.]"  ECF No. 14 at 63, 65, 67 (emphasis added).

Making notice even less plausible, the letter contains information from what appears to be an unrelated individual's debt verification letter.  For example:  "I give NOTICE to CEASE AND DESIST COLLECTION ACTIVITIES PRIOR TO VALIDATION OF PURPORTED DEBT, on

15

*See* ECF No. 14 at 62–69.  Without sufficient notice, Defendants cannot have violated

§ 1692g(b).[15]  The Court therefore dismisses with prejudice Plaintiffs' FDCPA claims (counts 15

and 25) as insufficiently pled.

          B.      *State-Law Claims*

To the extent any of Plaintiffs' remaining state-law claims for damages are not mooted by

the Sale and Discharge, the Court declines to exercise supplemental jurisdiction under 28 U.S.C.

§ 1367.

Although district courts have supplemental jurisdiction over state-law claims "that are so

related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a),

such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156,

165 (1997).  And a district court "may decline to exercise supplemental jurisdiction" if it has

"dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  District

---

account **# 3083929401 (Andrea Huntley)**"; "On **4/17/08** I sent a Qualified /Written Request in which I . . . asked for **Valley National Bank** to provide the payoff amount . . . **Citi Financial Auto** never provided VERIFICATION[.]" *Id.* at 66, 67 (emphasis added).

15      The Court also notes that the AC fails to allege that Defendants sent Plaintiffs an "initial communication" that would trigger Defendants' obligations under § 1692g—let alone what the initial communication would have been or when it was sent.  "[T]he stay of collection activities mandated by Section 1692g(b) is only triggered by the submission of a debt verification letter within the 30-day period." *Finley v. Newport Beach Holdings, LLC*, No. 25-cv-0401, 2025 WL 3241167, at *4 (S.D.N.Y. Nov. 20, 2025) (explaining that if the plaintiffs did not submit a letter within 30 days of receiving a notice compliant with § 1692g(a), the defendants did not violate § 1692g(b) by sending the plaintiff collection notices after receiving the debt dispute letters). Without pleading facts sufficient to show that (i) § 1692g was triggered or that (ii) Plaintiffs responded with their FDCPA Letter within the 30-day prescribed period, Plaintiffs fail to allege their FDCPA claims. *See Villalba v. Houslanger & Assocs., PLLC*, No. 19-cv-4270, 2022 WL 900538, at *15 (E.D.N.Y. Mar. 28, 2022) (collecting cases and dismissing § 1692g claim because "Plaintiff has not alleged that [he] received an initial communication that triggered Defendants' obligations under Section 1692g").

16

courts may exercise their discretion in deciding whether to exercise supplemental jurisdiction over state-law claims when all federal claims were dismissed at the pleading stage. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *see also Cangemi v. United States*, 13 F.4th 115, 133–34 (2d Cir. 2021). Because this case has progressed only to the motion to dismiss stage without the parties conducting any discovery, applying the normal presumption against supplemental jurisdiction is appropriate. *See Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) ("find[ing] no abuse of discretion" in declining supplemental jurisdiction at motion to dismiss stage).

The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, which are hereby dismissed without prejudice.[16]

\*\*\*

The Court does not grant Plaintiffs leave to amend a second time because Plaintiffs do not ask for it and, in any event, the nature of the defects in the AC would render any further amendment futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (explaining that where "better pleading will not cure" the problem with a complaint, leave to amend should be denied as futile).

## CONCLUSION

For the reasons set forth above, the Court *sua sponte* dismisses without prejudice for lack of subject matter jurisdiction Plaintiffs' claims for: lack of standing to foreclose (count 1); quiet

---

[16] These claims include: fraud in the concealment (count 2); fraud in the inducement (count 3); intentional infliction of emotional distress (count 4); slander of title (counts 5 and 24); rescission (count 10); fraud upon the courts (count 13); unjust enrichment (counts 14 and 22); negligence (count 16); fraud (counts 17 and 18); wrongful foreclosure (count 19); breach of contract (count 20); and breach of the implied covenant of good faith and fair dealing (count 21).

title (counts 6 and 23); declaratory relief (count 7); champerty (count 11); and dual tracking (count 12).  *See* Fed. R. Civ. P. 12(h)(3).  On the remaining claims, the Court GRANTS Defendants' motion to dismiss, ECF No. 28, and dismisses with prejudice Plaintiffs' claims for TILA, HOEPA, and RESPA violations (counts 8 and 9) and FDCPA violations (counts 15 and 25).  *See* Fed. R. Civ. P. 12(b)(6).  Plaintiffs' state-law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  All claims having been dismissed, the Clerk of Court is respectfully directed to enter judgment consistent with this Order, close this case, and mail a copy of this Order to *pro se* Plaintiffs.

> SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
     July 31, 2026